UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. |
| | ) | VIOLATION: |
| | ) | |
| v. | ) | 18 U.S.C. § 1347 - |
| | ) | Health Care Fraud |
| VLADIMIR P. SHURLAN, M.D. | ) | |

**05 10100 NMG**

I N F O R M A T I O N

COUNT ONE:        (Title 18, United States Code, Section 1347 -
Health Care Fraud)

The United States Attorney charges that:

I.   Background Allegations

At all times material hereto, unless otherwise alleged:

A.   The Health Care Benefit Programs

1.   At all times relevant to this Information, the
Department of Health and Human Services was an agency of the
United States and was responsible for the funding, administration
and supervision of the Medicare Program, which was a health care
program enacted by Congress to pay for the cost of certain
medical services for persons aged 65 and older, and for persons
with disabilities.  The Centers for Medicare and Medicaid
Services ("CMS"), formerly known during portions of the relevant
time frame here as the Health Care Financing Administration
("HCFA"), was a division of that agency and was directly
responsible for the administration of the Medicare Program.  In
discharging those responsibilities, CMS and HCFA contracted with

private insurance companies, known as "carriers" and "fiscal intermediaries," to receive, review, and pay appropriate claims for reimbursement for the provision of services to Medicare Program beneficiaries.   42 U.S.C. § 1395u.

2.    Medicare had two parts: Part A (Hospital Insurance) and Part B (Medical Insurance).   Medicare Part A helped pay for hospitalization costs, services rendered by skilled nursing facilities, home health and hospice care.   Medicare Part B helped pay for physician services, outpatient hospital care, and some other medical services such as physical and occupational therapy.

3.    HCFA and CMS, in Massachusetts, contracted with National Heritage Insurance Company, a Medicare contractor, to process Medicare Part B claims submitted for physician services.

4.    Congress gave the Secretary of HHS broad statutory authority to "prescribe such regulations as may be necessary to carry out the administration of the insurance programs. . . ." 42 U.S.C. § 1395hh(a)(1).   HCFA, and subsequently CMS, were responsible for administering the Medicare program.

5.    Congress also gave the Secretary of HHS the power to formulate rules for the administration of Medicare programs, through the issuance of manual instructions, interpretive rules, statements of policy, and guidelines of general applicability. 42 U.S.C. § 1395hh(c)(1).

6.    Pursuant to this authority, the Secretary of HHS formulated rules, issued instructions and adopted a coding system which used the American Medical Association's Physician's Current Procedure Terminology Code Book, also known as the "CPT Code Book." The Medicare program used this coding system because it was designed to give providers "a common language that accurately describes the kinds and levels of services provided and that can serve as a basis for coverage and payment determinations." 42 C.F.R. § 405.512. Other health care benefit programs also adopted the CPT Code Book for claims purposes.

7.    The American Medical Association in the foreward to the CPT Code Book stated that: "[t]he purpose of the terminology is to provide a uniform language that will accurately describe medical, surgical, and diagnostic services, and will thereby provide an effective means for reliable nationwide communication among physicians, patients, and third parties."

8.    The CPT Code Book assigned five digit codes with descriptive terms and identifying codes for reporting services performed by health care providers.

9.    In order to be reimbursed by Medicare or a private health care benefit program, a physician or other authorized health care professional was required to become a "provider" for the program and enter into a "provider agreement."

10. The Medicare program and other private health care benefit programs reimbursed providers through the CPT coding system. These codes provide various levels of reimbursement based on the services provided.

11. The CPT coding system distinguished between an "office visit" in which a provider saw, examined, and treated a patient, and a "consultation." The CPT coding system defined "consultations" as "a type of service provided by a physician whose opinion or advice regarding evaluation and/or management of a specific problem is requested by another physician or other appropriate source." The CPT coding system further provided that a provider who treated a patient on a consultation basis was required to: (1) document the request and need for consultation in the patient's medical record; (2) document the consultant's opinion and any services ordered or provided in the patient's medical record; and (3) communicate to the requesting physician the consultant's opinion and any services ordered or provided to the patient.

12. The Medicare program and private health care benefit programs reimbursed claims by providers for "consultations" at a higher level than they did claims for "office visits."

13. The Medicare program did not allow for providers to submit claims for reimbursement in connection with the treatment of immediate family members of his or her household.

14.   The Medicare program and private health benefit
programs relied upon the provider to describe accurately the
medical services rendered to a beneficiary and to use the proper
CPT codes in billing for the services rendered.

B.   The Defendant

15.   Defendant **VLADIMIR P. SHURLAN, M.D.**, was a physician
licensed by the State of Massachusetts to practice medicine and
operated a solo medical practice known as "Orthopedics, Sports
and Rehabilitation Medicine" at 7 Channing Street, Cambridge,
Massachusetts.

16.   Defendant **VLADIMIR P. SHURLAN, M.D.**, entered into
provider agreements with health care benefit programs, including
Medicare and other private health care benefit programs.  These
programs were "health care benefit programs" within the meaning
of 18 U.S.C. § 24(b) in that they were plans, affecting commerce,
under which medical benefits, items, and services were provided
to individual participants, and through which payments were made
to individuals and entities providing medical benefits, items and
services.

17.   Defendant **VLADIMIR P. SHURLAN, M.D.**, beginning no later
than in or about January 1997, began treating individuals from
his office at 7 Channing Street, Cambridge, Massachusetts, using
various self-described "holistic and multidisciplinary"
therapies, including home oxidative therapy, nutrition therapy,

5

and chelation therapy, for which he billed Medicare and other private health care benefit programs using CPT codes indicating that these treatments were "consultations." Defendant **VLADIMIR P. SHURLAN, M.D.,** also submitted Medicare claims in which he sought and obtained reimbursement for purported treatments to immediate family members.

18.    On or about August 10, 2000, defendant **VLADIMIR P. SHURLAN, M.D.,** received a letter dated August 9, 2000, from a private health benefit program, which advised him that it was improper to bill for treatments such as home oxidative therapy, nutrition therapy and chelation therapy as "consultations," and which further informed defendant **VLADIMIR P. SHURLAN, M.D.,** that such billings practices represented a "gross mis-representation of the services performed." Attached to this letter was a copy of the CPT guidelines setting forth the circumstances in which the CPT codes for "consultations" could be utilized.

19.    As of on or about August 10, 2000, defendant **VLADIMIR P. SHURLAN, M.D.,** had received reimbursements totaling approximately $151,501.36 from the Medicare program and other private health benefit programs in connection with claims submitted using the CPT code for "consultations" for alleged services rendered by the defendant for which there had been no referrals and in connection with claims purporting to be for treatments of defendant's immediate family members.

## II.   The Scheme To Defraud

20.   Beginning on or about August 10, 2000, and continuing through on or about January 23, 2003, at Cambridge, in the District of Massachusetts and elsewhere,

**VLADIMIR P. SHURLAN, M.D.,**

defendant herein, in connection with the delivery of and payment for health care benefits, items and services, devised and intended to devise a scheme and artifice to defraud various health care benefit programs and to obtain money under the custody and control of various health care benefit programs by means of materially false and fraudulent pretenses, and representations, well-knowing that the pretenses and representations were false and fraudulent when made – to wit, defendant **VLADIMIR P. SHURLAN, M.D.,** falsely indicated on medical claims forms that he had provided medical services to beneficiaries for which the CPT "consultation" codes were applicable when, in fact, defendant **VLADIMIR P. SHURLAN, M.D.,** well knew that he had not provided treatments for which the "consultation" code could be properly utilized.

### A.   The Purpose of the Scheme

21.   The purpose of the scheme and artifice was to enrich defendant **VLADIMIR P. SHURLAN, M.D.,** and to defraud various health care benefit programs of money by causing health care benefit programs to pay excessive amounts in response to claims

for medical services submitted by defendant **VLADIMIR P. SHURLAN, M.D.** As a result of this scheme and artifice to defraud, defendant **VLADIMIR P. SHURLAN, M.D.,** caused various health care benefit programs to be defrauded of more than $20,000.

### B. Manner and Means

22. It was part of the scheme and artifice to defraud that defendant **VLADIMIR P. SHURLAN, M.D.,** treated individuals for various maladies using treatments described by the defendant as "holistic and multidisciplinary" (which included home oxidative therapy, nutrition therapy, and chelation therapy).

23. It was a further part of the scheme and artifice to defraud that defendant **VLADIMIR P. SHURLAN, M.D.** – even after receiving the August 9, 2000, letter from a private health insurance benefit program advising him that his billing practices were improper and enclosing the CPT guidelines setting forth the criteria for utilizing the CPT "consultations" codes – submitted claims for medical services to Medicare and other private health benefit insurance plans in which he listed the CPT codes for "consultations" on behalf of these beneficiaries and sought reimbursement from Medicare and other private health benefit programs on that basis.

24. It was further a part of the scheme and artifice to defraud that no physician or other appropriate source had in fact requested defendant **VLADIMIR P. SHURLAN, M.D.,** to provide

opinions or advice with respect to the treatment of these individuals.

25.  It was further a part of the scheme and artifice to defraud that, with respect to some of the dates listed by defendant **VLADIMIR P. SHURLAN, M.D.,** on the claims forms, the defendant had not met with the beneficiaries whose names appeared on the claims forms being submitted to the health care benefit programs.

26.  It was further part of the scheme and artifice to defraud that, as a result of the false and fraudulent claims he submitted, defendant **VLADIMIR P. SHURLAN, M.D.,** received reimbursements from the Medicare program and other private health benefit programs totaling approximately $46,540.84, which was at least $24,601.16 more than defendant **VLADIMIR P. SHURLAN, M.D.,** would have received had he accurately described the treatments he was providing.

All in violation of Title 18, United States Code, Sections 1347 and 2.

                              MICHAEL J. SULLIVAN
                              UNITED STATES ATTORNEY for the
                              DISTRICT OF MASSACHUSETTS

                    By:    _____
                              JAMES E. ARNOLD
                              Assistant U.S. Attorney

JS 45 (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet      5  10100**      U.S. District Court - District of Massachusetts

Place of Offense: <u>Massachusetts</u>      Category No. <u>II</u>      Investigating Agency <u>FBI</u>

City  <u>Cambridge</u>      **Related Case Information:**

County  <u>Middlesex</u>      Superseding Ind./ Inf. _____  Case No. _____
Same Defendant _____  New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name  <u>Vladimir P. Shurlan, M.D.</u>      Juvenile  ☐ Yes  ☒ No

Alias Name _____

Address  <u>7 Channing Street, Cambridge, Massachusetts</u>

Birth date (Year only): <u>1944</u> SSN (last 4 #): <u>0282</u> Sex <u>M</u> Race: <u>White</u>      Nationality: _____

Defense Counsel if known:  **James M. Caramanica, Esq.**      Address:  **92 Montvale Avenue, Suite 4170**
                                                                   **Stoneham, MA 02180**
**Bar Number:** _____

**U.S. Attorney Information:**

AUSA  <u>James E. Arnold</u>      Bar Number if applicable  <u>DC 426040</u>

Interpreter:      ☐ Yes ☒ No      **List language and/or dialect:** _____

Matter to be SEALED:      ☐ Yes      ☒ No

      ☐ **Warrant Requested**      ☒ **Regular Process**      ☐ **In Custody**

**Location Status:**

**Arrest Date:** _____

☐ **Already in Federal Custody as** _____ **in** _____ .
☐ **Already in State Custody** _____  ☐ **Serving Sentence**  ☐ **Awaiting Trial**
☐ **On Pretrial Release:** **Ordered by** _____ **on** _____

**Charging Document:**      ☐ **Complaint**      ☒ **Information**      ☐ **Indictment**

**Total # of Counts:**      ☐ **Petty** _____      ☐ **Misdemeanor** _____      ☒ **Felony**  **One**

**Continue on Page 2 for Entry of U.S.C. Citations**

☒      I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
accurately set forth above.

Date: _____      Signature of AUSA: _____

JS 45  (5/97) - (Revised USAO MA 3/25/02)  Page 2 of 2 or Reverse

**District Court Case Number**  (To be filled in by deputy clerk): _____

**Name of Defendant**    Vladimir P. Shurlan, M.D. _____

**U.S.C. Citations**

|  | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 18 U.S.C. §1347 | Health Care Fraud | One |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:**