

**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

February 4, 2005

Mr. James Caramanica, Esq.
92 Montvale Avenue
Suite 4170
Stoneham, MA  02180

Re:  <u>United States v. Vladimir P. Shurlan, MD</u>

Dear Mr. Caramenica:

This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Vladimir P. Shurlan, M.D. ("Defendant"), in the above-captioned case.  The Agreement is as follows:

1.  <u>Plea to Information</u>

Defendant agrees to waive Indictment and plead guilty to a one-count Information (attached as Exhibit A) charging the Defendant with, between on or about August 10, 2000, and January 23, 2003, engaging in a scheme to commit health care fraud in violation of 18 U.S.C. § 1347.  Defendant agrees to waive venue, to waive any applicable statutes of limitations, and to waive any defects in the Information.  As set forth in the attached statement of facts, Defendant expressly and unequivocally admits that, from the time period between on or about August 10, 2000, and January 23, 2003, he in fact knowingly and willfully executed a scheme and artifice to defraud various health care benefit programs and to obtain – by means of materially false and fraudulent pretenses, representations and promises – monies controlled by various health care benefit programs, all of which were in connection with the delivery of and payment for health care services.  Defendant agrees to the accuracy of the attached Statement of Facts.

Other than the charges in the Information, the Government agrees not to bring any additional federal criminal non-tax charges against Defendant relating to billings by him submitted to any health care benefit program between the years 1997 and the present.

### 2.    Penalties

Defendant faces the following maximum penalties:  ten (10) years imprisonment; a fine not to exceed $250,000, or twice the gross gain or loss involved in the offense, whichever is greater, or both; a term of supervised release of three (3) years in addition to any sentence of imprisonment; and a mandatory special assessment of $100.00.  Additionally, the Court may order restitution to any victims of the offenses.

Concerning the term of supervised release, if any of the conditions of supervised release are violated, the Defendant may be subjected to imprisonment for the entire term of supervised release without credit for any time already served on the term of supervised release prior to such violation.  18 U.S.C. § 3583(e)(3).

Defendant may also be deportable and/or excludable by the United States Immigration and Customs Enforcement as a consequence of his conviction of the offenses to which he is pleading guilty.

### 3.    Sentencing Guidelines

The sentence to be imposed upon Defendant is within the discretion of the sentencing Court, subject to the statutory maximum penalties set forth above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, ____ U.S. ___ , 2005 WL 50108 (January 12, 2005).  In imposing the sentence, the Court must consult and take into account the United States Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. §3553(a).

The parties agree to take the following positions at sentencing with respect to the sentencing guidelines:

> (a)    That the November 1, 2004 Sentencing Guidelines manual should be utilized;

2

    (b)   That Defendant's offense of conviction is governed by the fraud guideline, U.S.S.G. § 2B1.1 (Nov. 1, 2004);

    (c)   That the base offense level for the fraud guideline is six (6), U.S.S.G. § 2B1.1(a)(2) (Nov. 1, 2004);

    (d)   That an enhancement of four (4) levels is warranted because the offense involved a loss of more than $10,000 and less than $30,000, U.S.S.G. § 2B1.1(b)(1)(C) (Nov. 1., 2004); and

    (e)   That an enhancement of two (2) levels is warranted because Defendant abused a position of private trust with the various health care benefit programs in a manner that significantly facilitated the commission of the offense, U.S.S.G. § 3B1.3 (Nov. 1, 2004).

Based on Defendant's prompt acceptance of personal responsibility for the offense(s) of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by two (2) levels Defendant's Adjusted Offense Level under U.S.S.G. § 3E1.1.

The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G. § 3E1.1 if, at any time between his execution of this Agreement and sentencing Defendant:

    (a)   Fails to admit a complete factual basis for the plea;

    (b)   Fails to truthfully admit his conduct in the offenses of conviction;

    (c)   Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under U.S.S.G. § 1B1.3;

    (d)   Fails to provide truthful information about his financial status;

    (e)   Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Defendant is accountable under U.S.S.G. § 1B1.3;

3

(f)   Engages in acts which form a basis for finding
      that Defendant has obstructed or impeded the
      administration of justice under U.S.S.G. § 3C1.1;

(g)   Intentionally fails to appear in Court or violates
      any condition of release;

(h)   Commits a crime;

(i)   Transfers any asset protected under any provision
      of this Agreement; and/or

(j)   Attempts to withdraw his guilty plea.

       Defendant expressly understands that he may not withdraw his
plea of guilty if, for any of the reasons listed above, the U.S.
Attorney does not recommend that he receive a reduction in
Offense Level for acceptance of responsibility.

       Defendant expressly understands that, in addition to
declining to recommend an acceptance-of-responsibility
adjustment, the Government may seek an upward adjustment pursuant
to U.S.S.G. § 3C1.1 if Defendant obstructs justice after date of
this Agreement.

       The U.S. Attorney and Defendant agree that there is no basis
for a departure from the sentencing range established by the
United States Sentencing Guidelines.

       4.   Sentence Recommendation

       The parties agree to recommend that the Court sentence
Defendant to a sentence within the applicable sentencing
guideline range, and that such a sentence will be satisfy the
objectives set forth in 18 U.S.C. § 3553(a) and will result in a
reasonable sentence.

       Assuming that the Court concurs with the parties and holds
that Defendant's applicable guideline range falls within Zone B
of the sentencing table, the U.S. Attorney agrees not to object
to Defendant's request that he be sentenced to a term of home
detention pursuant to U.S.S.G. § 5C1.1(c)(3).

       The parties further agree to recommend that an order of
restitution as set forth below in paragraph 11 be imposed.

       In the event of an appeal from, or collateral challenge to,
Defendant's sentence, the U.S. Attorney reserves his right to

4

argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

5.   Payment of Mandatory Special Assessment

Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

6.   Protection of Assets for Payment of Restitution, Forfeiture and Fine

Defendant agrees not to transfer, or authorize the transfer of, any asset which has been restrained by Order of the Court in this case or any asset, whether or not restrained, which Defendant has agreed to forfeit pursuant to this Agreement.

Defendant agrees not to transfer, or authorize the transfer of any other asset in which he has an interest without prior express written consent of the U.S. Attorney, except for:

> (1)   Assets subject to superior, secured interests of innocent third parties, in which Defendant has an equity interest of less than $10,000;
>
> (2)   Ordinary living expenses necessary to house, clothe, transport and feed Defendant and those to whom he owes a legal duty of support, so long as such assets do not exceed $3,000 per month; and
>
> (3)   Attorney's fees incurred in connection with this criminal case.

This prohibition shall be effective as of the date of Defendant's execution of this Agreement and continue until the fine, forfeiture and/or restitution ordered by the Court at sentencing incurred as a result of the conduct charged in the Information are satisfied in full.

Defendant further agrees that, prior to sentencing, he will truthfully and accurately complete the sworn financial statement enclosed with this Agreement.

7.   Waiver of Rights to Appeal and to Bring Collateral Challenge

Defendant is aware that he has the right to challenge his sentence and guilty plea on direct appeal.  Defendant is also aware that he may, in some circumstances, be able to argue that his plea should be set aside, or his sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255).

In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge:

(1)   Defendant's guilty plea and any other aspect of Defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and

(2)   The imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney pursuant to this agreement.

This Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the U.S. Attorney therefore retains his appeal rights.

8.   Court Not Bound By Agreement

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge. Within the maximum sentence which Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge.  Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(B).  Defendant may not withdraw his plea of guilty regardless of what sentence is imposed.  Nor may Defendant withdraw his plea because the U.S. Probation Office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties.  In the event that the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the U.S. Attorney, the U.S. Attorney reserves the right to defend the sentencing judge's calculations and sentence in any subsequent appeal or collateral challenge.

6

8.   <u>Restitution</u>

Pursuant to Title 18, U.S.C. § 3663A, the Court shall order Defendant to pay restitution for the full loss caused by defendant's conduct.  Defendant agrees the Court's consideration of the amount of restitution shall **NOT** be limited to the amounts alleged in the counts to which the defendant is pleading guilty, and should include **ALL** conduct engaged in by Defendant without any limitation which may be imposed by the holding of *Hughey v. United States*, 495 U.S. 411 (1990).  Defendant further agrees that any amount ordered by the Court to be paid as restitution may not be discharged, in whole or in part, in any bankruptcy proceeding.  Defendant understands that restitution is mandatory without regard to Defendant's ability to pay because the offense of conviction occurred after April 24, 1996.  Defendant agrees that any restitution ordered imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.

The parties agree and stipulate that no order of restitution for losses incurred by the Medicare Trust Fund should be ordered in this matter as those losses will be addressed by Defendant and the U.S. Attorney separately.

Defendant agrees that an order of restitution in the amount of $56,425.96 is appropriate with respect to the private health benefit programs that suffered losses as a result of his conduct, and further agrees to make payments of restitution to the following victims:

1.   Blue Cross/Blue Shield of MA:        $35,375.38
     Landmark Center
     401 Park Drive
     Boston, MA  02215

2.   Blue Cross/Blue Shield of NH:        $   219.60
     Anthem Health Plans of NH, Inc.
     3000 Goffs Falls Road
     Manchester, NH  03111

3.   Aetna, Inc.:                         $20,830.98
     151 Farmington Ave.
     Hartford, CT  06156

Pursuant to 18 U.S.C. § 3663A(a)(3), Defendant agrees to the entry of an order requiring restitution in these amounts. Defendant understands and agrees that these amounts are in excess of the amounts resulting from his criminal conduct alleged in

7

Count One of the Information, and that these amounts reflect
monies due and owing these programs as a result of overbillings
submitted by Defendant beginning in January 1997 and continuing
thereafter. Defendant further agrees to pay any restitution
amount ordered on the date of sentencing.

### 9.   Information For Presentence Report

Defendant agrees to provide all information requested by the
U.S. Probation Office concerning his assets.

### 10.   Civil Liability

By entering into this Agreement, the U.S. Attorney does not
compromise any civil liability, including but not limited to any
False Claims Act or tax liability, or any administrative
liability or consequences which Defendant may have incurred or
may incur as a result of his conduct and his plea of guilty to
the Attached Information.

### 11.   Rejection of Plea By Court

Should Defendant's guilty plea not be accepted by the Court
for whatever reason, or later be withdrawn or successfully
challenged by Defendant, this Agreement shall be null and void at
the option of the U.S. Attorney. In this event, Defendant agrees
to waive any defenses based upon the statute of limitations or
Speedy Trial Act with respect to any and all charges that could
have been timely brought or pursued as of the date of this
Agreement.

### 12.   Breach of Agreement

If the U.S. Attorney determines that Defendant has failed to
comply with any provision of this Agreement, has violated any
condition of his pretrial release, or has committed any crime
following his execution of this Agreement, the U.S. Attorney may,
at his sole option, be released from his commitments under this
Agreement in their entirety by notifying Defendant, through
counsel or otherwise, in writing. The U.S. Attorney may also
pursue all remedies available to him under the law, irrespective
of whether he elects to be released from his commitments under
this Agreement. Further, the U.S. Attorney may pursue any and
all charges which otherwise may have been brought against the
Defendant and/or have been, or are to be, dismissed pursuant to
this Agreement. Defendant recognizes that no such breach by him
of an obligation under this Agreement shall give rise to grounds
for withdrawal of his guilty plea. Defendant understands that,

8

should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the Government pursuant to this Agreement, including the attached Statement of Facts, without any limitation.  In this regard, Defendant hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

### 13.  Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

### 14.  Complete Agreement

This letter contain the complete agreement between the parties relating to the disposition of this case.  No promises, representations or agreements have been made other than those set forth in this letter.  This Agreement supersedes prior understandings, if any, of the parties, whether written or oral. This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below.  Please also sign below as Witness.  Return the original of this letter to Assistant U.S. Attorney James E. Arnold.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: _____  4/6/5

MICHAEL K. LOUCKS
White-Collar Crime Section Chief

JAMES E. ARNOLD
Assistant U.S. Attorney

### ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney.  I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts.  I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them.  I am satisfied with the legal representation provided to me by my attorney.  We have had sufficient time to meet and discuss my case.  We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial.  I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

_____
VLADIMIR P. SHURLAN, M.D.
Defendant

Date:___03.14.05_____


I certify that Vladimir P. Shurlan, M.D., has read this Agreement and that we have discussed its meaning.  I believe he understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly.

_____
JAMES CARAMANICA, Esq.
Attorney for Defendant

Date:___3/21/05_____

## STATEMENT OF FACTS

I, Vladimir P. Shurlan, M.D., expressly and unequivocally admit that I committed and caused the acts to be alleged in Count One of the Information and that I am guilty of the offense alleged in that count. I admit that, from the time period between on or about August 10, 2000, and on or about January 23, 2003, in connection with the delivery of and payment for health care services, I knowingly and willfully executed a scheme and artifice to defraud various health care benefit programs and to obtain - by means of materially false and fraudulent pretenses, representations and promises - monies controlled by various health care benefit programs, all of which were in connection with the delivery of and payment for health care services. Additionally, I, Vladimir P. Shurlan, M.D., admit to the following:

1. I was a physician licensed by the State of Massachusetts to practice medicine. I operated a solo medical practice known as "Orthopedics, Sports and Rehabilitation Medicine" from my home located at 7 Channing Street, Cambridge, Massachusetts.

2. I entered into provider agreements with various health care benefit programs, including Medicare, Blue Cross/Blue Shield of Massachusetts, Blue Cross/Blue Shield of New Hampshire, and Aetna US Healthcare. Each of these programs were plans, affecting commerce, through which medical benefits and services were provided to individual participants, and each of these plans provided payments to medical providers, such as myself, who provided medical benefits and services to individual participants.

3. These health care benefit programs all used the American Medical Association's Physician's Current Procedure Terminology Code Book ("CPT Code Book") for purposes of claims reimbursement. The CPT Code Book assigned five-digit codes with descriptive terms and identifying codes for reporting services performed by health care providers.

4. Beginning no later than in or about January 1997, I began treating individuals from my office at 7 Channing Street, Cambridge, Massachusetts, using various "holistic and multidisciplinary" therapies, including home oxidative therapy, nutrition therapy, and chelation therapy. I regularly billed Medicare and the private health care benefit programs using CPT codes indicating that these treatments were "consultations." I also submitted some Medicare claims in which I sought and

11

obtained reimbursement for treatments to my immediate family members.

5. On or about August 10, 2000, I received a letter dated August 9, 2000, from Aetna US Healthcare, a private health benefit program, which advised me that it was improper to bill for treatments such as home oxidative therapy, nutrition therapy and chelation therapy as "consultations." This letter further informed me that such billings practices represented a "gross mis-representation of the services performed."

6. Attached to this letter was a copy of the CPT guidelines setting forth the circumstances under which the CPT codes for "consultations" could be utilized. This attachment stated, in pertinent part, that "A consultation is a type of service provided by a physician whose opinion or advice regarding evaluation and/or management of a specific problem is requested by another physician or other appropriate source." The attachment further advised that:

> The request for a consultation from the attending physician or other appropriate source and the need for consultation must be documented in the patient's medical record. The consultant's opinion and any services that were ordered or performed must also be documented in the patient's medical record and communicated to the requesting physician or other appropriate source.

7. I strongly disagreed with Aetna's policies and, in a letter I wrote dated September 21, 2000, I advised Aetna that I disagreed with the manner in which they handled claims reimbursements. Later, in response to a second letter that I had received from Aetna, I sent the company a letter dated November 17, 2000, in which among other things, I stated that "whether or not I have used the codes to record my claims is totally irrelevant and symbolic." With this letter, I also enclosed an invoice in which I purported to bill Aetna $500.00 for my services in drafting my September 21 and November 17 responses to their letters.

8. After receiving Aetna's letter dated August 9, 2000, I continued to indicate on medical claims forms that I had provided medical services to beneficiaries for which the CPT "consultation" codes were applicable. I submitted these claim forms to Medicare and to the various private health care benefit programs for the purpose of obtaining reimbursements from those programs.

9.    I knew when I completed these claims forms that any treatments I had provided to the beneficiaries did not meet the CPT "consultation" code requirements as set forth in the attachment to the August 9, 2000, letter I had received from Aetna.  The medical services I provided were not pursuant to the referral of physicians or other appropriate sources who sought my opinion or advice.  Instead, I simply saw patients with various maladies and then applied a course of "holistic and multidisciplinary" treatments (which included home oxidative therapy, nutrition therapy, and chelation therapy).

10.    Additionally, in some instances, I submitted claims for medical services when I had not seen or otherwise treated the individual beneficiary on the dates listed.

11.    After on or about August 10, 2000, when I received the Aetna letter, I continued to submit claims using the CPT "consultation" code to the Medicare program, Blue Cross/Blue Shield, and Aetna seeking reimbursements for medical services provided.  While I also listed a dollar figure for my services on each form, I knew when I submitted these claims forms that the amounts that would be actually reimbursed were fixed and would be considerably less than the amounts that I listed on the claims forms.

12.    With respect to the claims that I submitted during this time period, I knew that it was contrary to these health care benefit programs' policies for me to use the CPT "consultation" code in connection with the services that I was actually providing.  I understood that the health care benefit programs reimbursed for claims using the CPT "consultation" codes at a higher level than they reimbursed claims using the CPT codes for office visits.  I knowingly and willfully used the CPT "consultation" code so that I could obtain more money in reimbursement than I would otherwise have been entitled to receive.  In connection with these claims, I received from the Medicare program and other private health benefit programs $46,540.84, which I acknowledge was at least $24,601.16 more than I should have received had I accurately described the treatments I was providing.

13.    In committing these acts, I admit that I engaged in an abuse of private trust (as that term is defined in U.S.S.G. § 3B1.3) and that this abuse of trust significantly facilitated the commission of my fraudulent activity.  I knew and understood that the health care benefit programs relied upon the fact that I was a licensed professional and that, in the first instance, these programs would rely upon my medical judgment and the

13

billing information that I submitted to them.  I took advantage
of this fact and submitted claims forms that falsely indicated
that I had rendered treatments that met the CPT code for
"consultations," even when I knew that any treatments I had
provided did not meet the definition for this code.

14.  I admit that I am now mentally competent, and that at
the time I committed these offenses, I was mentally competent.

VLADIMIR P. SHURLAN, M.D.                    03.04.05
                                             Date

14