UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 05-CR-10100-NMG |
| | ) | |
| v. | ) | |
| | ) | |
| VLADIMIR P. SHURLAN, M.D., | ) | |
| | ) | |
| Defendant | ) | |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF PROBATION**

The United States of America, by its attorneys Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Assistant United States Attorney James E. Arnold, hereby submits this memorandum in opposition to defendant's motion for early termination of his probation. In his plea agreement, defendant Shurlan waived his right to seek a reduction of sentence. Even if that were not the case, the facts he presents are not sufficiently extraordinary to warrant the relief he seeks. Accordingly, his motion should be denied.

**FACTUAL BACKGROUND**

Defendant Vladimir Shurlan pled guilty to a one-count information charging him with engaging in health care fraud. PSR ¶ 13. In a Factual Statement attached to his plea agreement, defendant Shurlan admitted that from on or about August 10, 2000, through on or about January 23, 2003, he knowingly and willfully executed a scheme to defraud various health care benefit programs in order to obtain reimbursements to which he was not entitled. Defendant Shurlan admitted he disagreed with the billing codes used by insurance companies to determine reimbursement levels to physicians. See also PSR ¶ 16. Defendant Shurlan further admitted that he had engaged in two forms of billing fraud: one involving the knowing and intentional misuse

of billing codes, the other involving the submission of claims for treatments that never took place.  See PSR ¶¶ 17-21.

In his plea agreement, defendant Shurlan acknowledged that, as a result of this fraudulent activity, he received at $24,601.16 more than he would have received had he accurately described the treatments he was providing.  See also PSR ¶ 21.  Defendant Shurlan also admitted that his criminal conduct involved an abuse of private trust:

> I knew and understood that the health care benefit programs relied upon the fact that I was a licensed professional and that, in the first instance, these programs would rely upon my medical judgment and the billing information that I submitted to them.  I took advantage of this fact and submitted claims forms that falsely indicated that I had rendered treatments that met the CPT code for "consultations," even when I knew that any treatments I had provided did not meet the definition for this code.

Factual Statement attached to Plea Agreement; see also PSR ¶ 22.

Defendant's sentencing guidelines were 6-12 months imprisonment.  PSR ¶ 82.  On October 19, 2005, this Court sentenced defendant to two years probation with the first six months to be served in home detention.  The Court imposed various conditions of probation including a prohibition restricting the defendant "from engaging in an occupation, business or profession that would require or enable him to bill any third parties for medical services."  The Court also imposed a $2,000 fine, a $100 special assessment fee, and ordered the defendant to pay restitution totaling $56,425.96.  See Docket Entry 6.

Separately, defendant entered into a civil settlement agreement with the United States in which he agreed to pay (and has in fact paid) $89,153 in connection with his false claims to Medicare.  He also agreed to be excluded from participating in the Medicare program for 10 years.

# ARGUMENT

Defendant's motion for early termination of probation should be denied for two reasons: first, because defendant waived his right to seek a reduction of sentence in his plea agreement; and second, because the various circumstances presented by defendant, including his family circumstances, are not sufficiently extraordinary to warrant early termination of probation.

### A.   Defendant Waived the Right to Seek a Reduction of his Sentence

In his plea agreement, the defendant knowingly and voluntarily agreed to waive various rights pertaining to his sentence. Among the rights that the defendant agreed to waive were his right to challenge his sentence (absent certain circumstances not applicable here), as well as his right to seek a reduction of his sentence. *Inter alia*, defendant's plea agreement expressly provided as follows:

> Defendant is aware that he has the right to challenge his sentence and guilty plea on direct appeal. Defendant is also aware that he may, in some circumstances, be able to argue that his plea should be set aside, or his sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255.
>
> In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge:
>
>    * * *
>
>    (2)   The imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney pursuant to this agreement.

Plea Agreement, at page 6.

Through his motion seeking early termination of probation, defendant is seeking a reduction in his sentence. For all practical purposes, therefore, defendant Shurlan is effectively

lodging a challenge to his original sentence. In his plea agreement, however, defendant agreed not to challenge his sentence. Having negotiated the plea agreement and all of its various provisions (including the above-quoted waiver provision) at arms' length, defendant should not now be permitted to seek a reduction in his sentence. Cf. United States v. Soto-Cruz, 449 F.3d 258 (1st Cir. 2006); United States v. Gil-Quezada, 445 F.3d 33 (1st Cir. 2006); but see United States v. Gerritson, 2004 WL 2754821, *2 (S.D.N.Y. 2004) (holding that plea agreement providing that defendant may not "appeal [her sentence] nor otherwise litigate [it] under Title 28, United States Code, Section 2255 and/or Section 2241" did not preclude defendant's motion seeking early termination of probation).

**B.    Defendant's Circumstances Do Not Warrant Early Termination of Probation**

Defendant's motion is governed by Rule 32.1, Federal Rules of Criminal Procedure, and 18 U.S.C. § 3564(c).[1] Pursuant to 18 U.S.C. § 3564(c), a court may exercise its discretion and allow for early termination of probation under certain, limited circumstances:

> The court, after considering the factors set forth in section 3553(a) to the extent that they are applicable, may, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, terminate a term of probation previously ordered and discharge the defendant at any time in the case of a misdemeanor or an infraction or at any time after the expiration of one year of probation in the case of a felony, if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice.

---

[1] In his memorandum, Shurlan invokes 18 U.S.C. § 3583(e)(1), which is inapplicable. Section 3583 governs terms of supervised release that run after imprisonment. The Court did not sentence defendant to a term of supervised release, but rather sentenced defendant to a term of probation. As a result, 18 U.S.C. § 3564(c), which sets forth the standards pertaining to early termination of a term of probation, is the governing provision. See, e.g., United States v. Paterno, 2002 WL 1065682, *2 (D.N.J. 2002). Regardless, however, the same standards are applicable. Id.

The factors to be considered pursuant to 18 U.S.C. § 3553(a) are the very same factors that this Court considered in originally imposing sentence on the defendant and include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the [sentencing] guidelines . . .;

(5) any pertinent policy statement . . .;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

"[E]arly termination [of supervision] is not warranted as a matter of course." Gerritson, 2004 WL 2754821, at *3 (quoting United States v. Herrera, No. 94 Cr. 1021, 1998 WL 684471, at *2 (S.D.N.Y. Sept. 30, 1998)). The fact that a defendant has complied with his terms of probation and abided by the law is not, in and of itself, a sufficient ground to warrant early termination of probation. See, e.g., United States v. Caruso, 241 F. Supp.2d 466, 468-69 (D.N.J. 2003). Instead, early termination of probation should be ordered only occasionally when there are extraordinary circumstances warranting such relief. See United States v. Guilliatt, 2005 WL

589354, *1 (E.D. Pa. 2005); United States v. Herrera, 1998 WL 684471, *2 (S.D.N.Y. 1998); see also United States v. Williams, 2006 WL 618849, *1 (E.D. Pa. 2006) (same). It is the defendant's burden of establishing that the circumstances (including his conduct and the interests of justice) have changed sufficiently to justify early termination of probation. See Williams, 2006 WL 618849, at *1.

    Defendant points to several factors in arguing for early termination. First, he states that he had no prior involvement with the criminal justice system. The Government would note that while the defendant is correct that this is his first encounter with the criminal justice system, this matter does not involve the defendant's first foray with a regulatory authority pertaining to his practice of medicine, nor is this the first time that the defendant engaged in fraudulent conduct while practicing medicine. As reflected in the PSR, the defendant had previous (and different) legal problems with the Commonwealth of Massachusetts' Board of Registration in Medicine concerning (1) defendant's submission of false statements to the Board of Registration and (2) another matter involving conflicts of interests. See PSR ¶ 70. At time of sentencing, defendant's medical license was already suspended as a result of those issues.

    Second, the defendant argues that he has been in full compliance with the terms and conditions of his probation and that he has paid all fines, restitution, and a civil penalty. This observation, of course, means that the defendant has done nothing more than that which was required under the terms of probation as established by the Court. See, e.g., Williams, 2006 WL 618849, at *1. "Full compliance, after all, is merely what is expected of all people serving terms of [probation]." Karacsonyi v. United States, 152 F.3d 918, 1998 WL 401273, *1 (2d Cir.1998), quoted in Guilliatt, 2005 WL 589354, *1.

Next, the defendant notes that he has voluntarily resigned his medical license in the Commonwealth of Massachusetts. However, defendant neglects to mention that his medical license had already been suspended by the Commonwealth in connection with the previous unrelated misconduct discussed at paragraph 70 of the PSR.[2]

Finally, defendant seeks early termination of his probation so that he may accompany his mother back to the country where she was born (the former Yugoslavia). In support of this argument, he asserts that his mother is in ill health, that his mother is reliant upon him, and that his mother's sister is terminally ill. Although the Government is sympathetic to the wishes of defendant's mother to return to her former native country and to visit her ill sister, the Government does not believe that these factors are sufficient to alter the sentence that this Court imposed upon the defendant only a year ago. When the Court imposed sentence on the defendant a year ago, the Court was aware of defendant's mother's advanced age and of the fact that defendant's mother relied upon defendant for most of her daily needs. See PSR ¶ 50. These are not new circumstances.

It is an unavoidable consequence of the criminal justice system that the sentencing of an individual who has engaged in criminal conduct will likely have adverse consequences on family members. See, e.g., United States v. Jiminez, 419 F.3d 34, 46 (1st Cir. 2005) (affirming 170-month sentence imposed on father of three children). Although defendant's mother's sister's declining health is unfortunate and may not have been known a year ago, defendant simply has

---

[2] At the time defendant relinquished his medical license, he was already going to be excluded from participating in Medicare, Medicaid and all other federal health programs due to his billing fraud. See PSR 71. The defendant's practice of medicine was equally already restricted as a result of the limitations placed on him by the Court's special terms of probation.

not shown that it would be impossible for someone other than himself (including others either here or abroad) to accompany his mother on an airplane back to Serbia for purposes of a visit.

On the other side of the balance, due consideration must be given to the nature and circumstances of the defendant's crime. Health care fraud is a serious crime that endangers a system that is already in a precarious financial condition. As the First Circuit recently observed:

> "Medicare fraud is a serious crime which affects the financial integrity of a program meant to aid tens of millions of people in need of health care. Every dollar lost to fraud is a dollar that could have provided medical care to the elderly or the disabled."

United States v. Thurston, 456 F.3d 211, 220 (1st Cir. 2006) (internal quotation and edits omitted). Although the dollar figures involved in the defendant's criminal conduct were not terribly substantial, the defendant's conduct involved the height of arrogance -- he was warned by an insurance company that his billing practices were improper, PSR ¶ 15, he responded to that warning by writing letters to the insurance company stating his disagreement and submitting a bill to insurance company for his time, id., at ¶ 16, and he persisted in engaging in the very same billing practices thereafter, id., at ¶¶ 17-22.

This Court already exercised its discretion and afforded the defendant leniency in sentencing the defendant to the bottom of the applicable sentencing guideline, in granting the defendant's request for home confinement rather than imprisonment, and in imposing only a term of two years probation, rather than the statutory maximum term of five years. Weighing all of the circumstances, the defendant has simply not established that he is entitled to a further reduction in sentence.

**CONCLUSION**

For all of the foregoing reasons, the defendant's motion seeking early termination of probation should be denied.

                                  Respectfully submitted,

                                  MICHAEL J. SULLIVAN
                                  United States Attorney

By:   /s/ James E. Arnold
       JAMES E. ARNOLD
       Assistant U.S. Attorney
       One Courthouse Way, Suite 9200
       Boston, MA 02210
       (617) 748-3603

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document(s) filed through the ECF system will be sent electronically to counsel for defendant, who is a registered participant as identified on the Notice of Electronic Filing (NEF).

                                  /s/ James E. Arnold
                                  JAMES E. ARNOLD
                                  Assistant United States Attorney

Date:  November 13, 2006